Santiago AMARO, et al.,
Plaintiffs-Appellants,

v.

The CONTINENTAL CAN COMPANY,
Defendant-Appellee.

No. 83–5519.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1983.

Decided Jan. 23, 1984.

David Feller, Berkeley, Cal., for plaintiffs-appellants.

Franklin H. Wilson, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendant-appellee.

Before KENNEDY, SKOPIL, and PREGERSON, Circuit Judges.

SKOPIL, Circuit Judge:

## INTRODUCTION

In this case we are confronted with the competing tensions of access to the courts and arbitration. The issue presented is whether an arbitration award on a grievance under a collective bargaining agreement is res judicata of an Employee Retirement Income Security Act ("ERISA") claim arising out of the same facts. A related issue is whether exhaustion of arbitration procedures for contractual grievances is required prior to bringing a statutory claim under section 510 of ERISA. The district court held that the arbitration award on a contractual grievance adverse to former employees of the Continental Can Company barred their ERISA claims against their former employer. We reverse and remand.

## FACTS AND PROCEEDINGS BELOW

The plaintiffs are former employees ("employees") of the Continental Can Company ("Continental") who were laid off from the company's Los Angeles plant between 1976 and the present.[1] The employees' union representative, United Steel Workers of America ("Union"), filed a grievance on March 5, 1980 alleging that Continental's layoff of these employees and its correspondent shift of production to other plants violated various provisions of the collective bargaining agreement. The agreement mandates final and binding arbitration of contractual disputes. The Union pursued the grievance to arbitration. The arbitrator denied the grievance, concluding that Continental's conduct was in response to changing market conditions and did not violate the collective bargaining agreement.

On August 13, 1981 the Union filed a second grievance. This was identical to the first grievance, but covered the period subsequent to the arbitrator's decision. No disposition has been rendered in this grievance.

The employees then commenced this action. Their complaint alleges that Continental violated section 510 of ERISA, 29 U.S.C. § 1140, by laying employees off to prevent them from obtaining the number of years of continuous service required to qualify for Continental's Employee Pension Benefit Plan and Employee Welfare Plan.

These plans fall within the coverage of ERISA. *See* 29 U.S.C. § 1003(a)(1), (2). Section 510 of ERISA provides in pertinent part that:

[i]t shall be unlawful ... to discharge, fine, suspend, expel, discipline, or discriminate against a participant or a beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan].

29 U.S.C. § 1140.

This statutory claim arises from the same events that spurred the contractual griev-

1. The named plaintiffs are 17 former employees of the Company who sue on behalf of themselves and nearly 200 others who are similarly situated.

ance—Continental's laying off employees and shifting production work from its Los Angeles plant which resulted in the laid-off employees not being recalled to work. The district court granted Continental's motion for summary judgment, holding that the arbitrator's decision on the contractual claim is res judicata of the employees' ERISA claim. This dismissal came before the plaintiffs were able to pursue any discovery.

## DISCUSSION

### A. Standard of Review.

In reviewing a grant of summary judgment, we need only decide "whether any genuine issue of material fact remains for trial and whether the substantive law was correctly applied." *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 848-49 (9th Cir.1982), *prob. juris. noted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983). There are no disputed facts. Accordingly, we must only determine whether the substantive law was correctly applied. *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425, 428 (9th Cir.1983). That is, we must decide whether the district court erred in holding the arbitral decision is res judicata of the employees' ERISA claim.

### B. Res Judicata.

Under the doctrine of res judicata, a final judgment on the merits precludes the parties from relitigating claims which were or could have been raised in that action. *Nevada v. United States,* —— U.S. ——, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983). There is no precise or simple test that can be applied in determining what constitutes a claim. *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir.1980). A factor to be considered in determining whether the same claim is involved is "whether the two suits involve infringement of the same right." *Id.* We find that the rights involved in the employees' contractual claim before the arbitrator are independent of those implicated in their statutory claim under ERISA.

Continental contends that the employees' ERISA claim is in reality a contractual claim that has been the subject of final and binding arbitration. Specifically, it claims this is a contractual claim for a breach of an implied covenant of good faith. The essence of its argument is that the statutory claim is another attempt to relitigate the contractual claim. It claims the court should not reconsider the merits of the contractual grievance.

We reject this reasoning. Continental inaccurately characterizes the ERISA claim. The employees' statutory claim is premised on a violation of section 510 of ERISA. Section 510 prohibits anyone from interfering with the attainment of any rights to which a person may become entitled under the provisions of an employee benefit plan that falls within the coverage of ERISA. This statutory claim is not for benefits under a collective bargaining agreement. The employees, in fact, are not yet eligible for those benefits. Nor is this the same as an action for a breach of an implied covenant of good faith. The ERISA action is to enforce statutory rights designed to protect the employees from actions which interfere with their attainment of eligibility for those benefits. We are persuaded that in enacting section 510, Congress created a statutory right independent of any collectively bargained rights. *See Kross v. Western Electric Co., Inc.,* 701 F.2d 1238, 1242–43 (7th Cir.1983).[2]

2. Accordingly, we find Continental's reliance on *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), to be without merit. That case involved a dispute between the parties as to the interpretation and application of the collective bargaining agreement. *Id.* at 569, 80 S.Ct. at 1347. It did not concern a statutory claim. Our holding here is consistent with the deference given to arbitral interpretation of contract claims expressed in this and the two other cases comprising the United Steelworkers trilogy, *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), and subsequent cases.

To hold otherwise would endanger the protection afforded employees by Congress' enactment of ERISA. *See* 29 U.S.C. § 1001. That protection then would become subject to elimination in the collective bargaining process. An ERISA claim could be defeated without the benefit of the protections inherent in the judicial process.[3] The "ready access to the Federal courts" that ERISA was intended to provide would be eliminated. *See* 29 U.S.C. § 1001(b).

Moreover, employees not covered by a collective bargaining agreement would not face this threshold obstacle in an ERISA claim. Employees could bring an ERISA claim and avail themselves of liberal pretrial discovery without first succeeding in a grievance proceeding. We will not sanction results where the ability to bring an ERISA claim is dependent in part on the existence of a collective bargaining agreement or the scope of that agreement.[4]

Finally, the arbitrator of the employees' grievance did not consider the ERISA claim. Nor should he have. Arbitrators, many of whom are not lawyers, *see* F. Elkouri and E.A. Elkouri, *How Arbitration Works,* 3d Ed. (1981) at 90–91, 94, lack the competence of courts to interpret and apply statutes as Congress intended.[5] As the Supreme Court has said, "[t]he specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974). The resolution of statutory issues "is a primary responsibility of courts," not arbitrators. *Alexander,* 415 U.S. at 57, 94 S.Ct. at 1024.

The district court misapplied the substantive law when it held the arbitrator's decision barred the employees' claim under section 510 of ERISA.

C. Exhaustion of Arbitration Procedures.

We must also decide whether the employees' ERISA claims are barred for failure to exhaust their contractual remedies. The Union's August 13, 1981 grievance ("second grievance") has not reached a final disposition. Continental maintains that the employees' section 510 claim is barred by this failure to exhaust contractual remedies. The question is not whether the employees have exhausted their contractual claims, but whether they must do so prior to bringing a section 510 claim. Section 502 of ERISA, 29 U.S.C. § 1132, which provides for civil enforcement of the Act, is silent on the exhaustion doctrine being a prerequisite to an ERISA action.

Continental offers two principal arguments to support its position that section 510 claims may not be pursued until all contractual claims have been fully resolved.

---

*See, e.g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976); *Iowa Beef Packers, Inc. v. Thompson,* 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972); *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857 (9th Cir.1979).

**3.** The United States Supreme Court has stated that "[t]he record of the arbitration proceedings is not as complete [as judicial proceedings]; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 57–58, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974).

This case provides an example of the differences between the two processes. The employees here commenced discovery shortly after filing their complaint by making a request for the production of documents. After receiving

additional time to respond to this request, Continental did not produce any of the documents. Before the employees could compel production of the documents, the district court dismissed the action. The arbitral decision had previously been made without consideration of the information in these documents, as the employees had no means to seek production of them.

**4.** The logical result of Continental's position is that ERISA rights would become part of the collective bargaining agreement. This case is illustrative. Had it not been for the inclusion of the clause in the contract that prohibited subcontracting out, the employees may not have had a grievance to bring in the first place. There could then have been no arbitral decision that would be res judicata of the statutory claim.

**5.** This is not intended to denigrate the status of arbitrators, whose high level of competence has made arbitration work so effective that it has relieved the courts of a large burden.

It first contends that the employees are taking a contractual dispute and masking it as a statutory claim to gain access to the federal courts.[6] We have already rejected this argument.

Continental next argues that judicial interpretation of ERISA requires exhaustion of contractual remedies when the claim arises from an alleged breach of contract.[7] We have decided this claim does not specifically arise from a breach of contract. *Cf. Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980) (exhaustion required in claim for declaration of rights under a plan). We construe this argument to address the situation where the same essential facts give rise to both a section 510 claim and a contractual grievance. *See Kross v. Western Electric Co., Inc.*, 701 F.2d 1238 (7th Cir.1983).

In this argument Continental relies on the Seventh Circuit decision in *Kross*, a factually similar case, which expressly adopts the exhaustion of remedies doctrine. The *Kross* court concluded that the "strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case." *Id.* at 1244. In reaching this conclusion, that court relied heavily on its decision in *Challenger v. Local Union No. 1 of International Bridge*, 619 F.2d 645 (7th Cir.1980) and our decision in *Amato*, 618 F.2d 559 (9th Cir. 1980).

*Challenger* involved a claim under section 401 of ERISA, 29 U.S.C. § 1104, concerning a dispute regarding provisions of a pension plan. The plan mandated final and binding arbitration of any disputes. Section 503 of ERISA, 29 U.S.C. § 1133, requires all plans to have an internal appeal procedure. The court relied on this internal appeal procedure requirement of section 503 in its conclusion that the plaintiff must first exhaust his available remedies. The court in *Challenger* reasoned that "[t]o make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act." *Id.* at 649. *See Kross,* 701 F.2d at 1244 (quoting *Challenger*).

In *Amato* we enforced the exhaustion requirement in an action for "a declaration of the parties' rights and duties" under a pension plan. *Amato,* 618 F.2d at 561. Like *Challenger,* the pension plan in *Amato* contained the internal appeal procedure required by section 503. Our decision was based on the required section 503 administrative remedies and on the assistance the courts receive by "pension plan trustees *interpreting* their plans." *Id.* at 568 (emphasis added).

Both *Challenger* and *Amato,* the cases relied on by *Kross,* dealt with the rights of a party under a pension plan that falls within ERISA coverage. Both cases contained internal appeal procedures, congressionally mandated by section 503, that were designed to hear the claims presented in those cases.[8] We are faced solely with an alleged violation of a protection afforded by ERISA. There is no internal appeal procedure either mandated or recommended by ERISA to hear these claims. Furthermore, there is only a statute to interpret. That is a task for the judiciary, not an arbitrator.

---

**6.** We add that Continental's reliance on *General Teamsters v. Mitchell Brothers Truck Lines,* 682 F.2d 763 (9th Cir.1982), is misplaced. *Mitchell Brothers* was "a case based solely on the applicability of the Collective Bargaining Agreement, not upon a statute." *Id.* at 769. That is not parallel to the situation here.

**7.** In its brief, Continental claims that what the employees actually allege is that Continental has breached the terms of the collective bargaining agreement. Brief for Appellees at 14. However, a review of the complaint reveals that the employees specifically allege a violation of section 510 of ERISA. Contrary to Continental's claim, the employees do not need to allege a defect in the collective bargaining or pension agreements themselves in a section 510 action. There is no such element required in section 510 of ERISA. *See* 29 U.S.C. § 1140.

**8.** We note that the cases we relied on in *Amato* also involved contractual questions that the statutorily required internal appeal procedure was designed to answer. *E.g., Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979); *Taylor v. Bakery and Confectionery Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D.N.C.1978); *Morgan v. Laborers Pension Trust Fund for Northern California,* 433 F.Supp. 518 (N.D.Cal.1977).

*Alexander,* 415 U.S. at 57, 94 S.Ct. at 1024. Therefore, a "primary reason for the exhaustion requirement," *Amato,* 618 F.2d at 568; *see Kross,* 701 F.2d at 1245 (quoting *Amato* ), is not present in this case. Accordingly, we find *Kross* to be based on a flawed premise, and we refuse to follow it.

We instead are persuaded by the reasoning in *Alexander* and *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). *Kross* did not discuss these decisions. While these cases deal with statutes other than ERISA, they do concern situations analogous to the one here. In *Alexander,* the Supreme Court held that a prior arbitration decision did not foreclose a Title VII action.[9] In *Barrentine,* the Supreme Court extended this holding beyond Title VII to a case involving the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Continental argues these cases are distinguishable. Title VII and the FLSA deal with statutes that give non-waivable rights not subject to the collective bargaining process. *See Alexander,* 415 U.S. at 51, 95 S.Ct. at 1021; *Barrentine,* 450 U.S. at 740, 101 S.Ct. at 1444. We do not accept this distinction. In enacting ERISA, Congress intended "that *minimum standards be provided* assuring the equitable character of such plans...." Section 2 of ERISA, 29 U.S.C. § 1001(a) (emphasis added). We do not believe Congress intended that these minimum standards could be eliminated by contract. ERISA is intended to protect the interests of the pension plan participants "by improving the equitable character ... of such plans *by requiring them to* [meet certain standards]...." Section 2 of ERISA, 29 U.S.C. § 1001(c) (emphasis added). Congress did not intend section 510 of ERISA to be waivable.

We are persuaded by the Supreme Court's willingness in *Barrentine* to extend

the *Alexander* doctrine to statutory claims other than those arising under the Civil Rights Act. This indicates the Supreme Court's reasoning is based not on the *type* of non-waivable statutory right involved, but rather on placing realistic limits on the arbitration process when it is in tension with non-waivable statutory rights. Judicial procedures are more capable of safeguarding individual statutory rights than are arbitral procedures. *See* n. 3, *supra.* Arbitrators "very often are powerless to grant the aggrieved employees as broad a range of relief," *Barrentine,* 450 U.S. at 745, 101 S.Ct. at 1447, as is available under ERISA. *See* 29 U.S.C. § 1132.

We conclude that a "participant" or a "beneficiary" within the meaning of section 3 of ERISA, 29 U.S.C. § 1002(7) and (8), is not required to exhaust grievance or arbitration procedures prior to bringing an action under Section 510 of ERISA. In so holding, we are mindful of the potential effects of this decision on the dockets of the courts. A trial court can stay any statutory claim that arises out of substantially the same facts present in an ongoing administrative or arbitral proceeding. *Cf. Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979) (trial court may stay FLSA claim pending resolution of independent procedures that bear upon the case). The stay should be premised upon: (1) "receipt of satisfactory assurances that the arbitration is proceeding with diligence and efficiency," *Leyva,* 593 F.2d at 864; and (2) a determination that the relief available under section 502 of ERISA, 29 U.S.C. § 1132, will not be jeopardized by the stay. In some cases it may be necessary to grant immediately an injunction or other equitable relief, available under section 502, to avoid irreparable harm to a party.[10]

---

9. The district court and court of appeals in *Alexander* held the plaintiff was bound by the prior arbitration decision. The courts based their decisions on "notions of election of remedies and waiver and [on] the federal policy favoring arbitration of labor disputes." *Alexander,* 415 U.S. at 46, 95 S.Ct. at 1018.

10. We recognize that in some instances an employee may file a statutory claim before filing a contractual claim. In this situation the trial court must also consider if the statutory claim has progressed to the point where it would not be in the best interests of the court to stay the action.

If a court does stay the statutory claim, it must nonetheless "consider the employee's [statutory] claim *de novo.*" *Alexander,* 415 U.S. at 60, 95 S.Ct. at 1025. The findings of the arbitrator on factual matters "may be admitted as evidence and accorded such weight as the court deems appropriate." *Id.* In its consideration of the weight to be given the arbitrator's decision, the court should consider the adequacy of the record with respect to the section 510 claim, the procedures used in the arbitral forum, and the significance of new evidence that has been produced through pretrial discovery. *Cf. Alexander,* 415 U.S. at 60 n. 21, 95 S.Ct. at 1025 n. 21 (factors to consider in exercising discretion to accept arbitral findings in Title VII case). In the end, the court must exercise its discretion based on the circumstances of each individual case, while keeping in mind that the courts are the forum that must ultimately decide these statutory claims. *Id.*

## CONCLUSION

We reverse the district court's finding that the decision on the first grievance is res judicata of the employees' statutory claim. We remand the case to the district court to decide whether the statutory claim should be stayed pending the determination of the August 13, 1981 grievance. When the employees proceed with their statutory claim, the claim must be considered *de novo,* subject to the appropriate deference due the arbitrator's findings on factual matters.