**Rodney KIM, John Tokunaga, Wesley Teruya, Plaintiffs-Appellees,**

v.

**Thomas FUJIKAWA, Kenneth Kitashima, Myrtle Tanaka, Defendants-Appellants.**

No. 86–2566.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1987.

Decided Sept. 17, 1987.

Jeffrey S. Harris, Honolulu, Hawaii, for plaintiffs-appellees.

Sean Kim, Honolulu, Hawaii, for defendants-appellants.

Before CHAMBERS, GOODWIN and TANG, Circuit Judges.

TANG, Circuit Judge:

This case and a companion case, *Int'l Bhd. of Elec. Workers, Local 1186 v. Pacific Elec. Contr. Assoc.*, 827 F.2d 1400 (*IBEW v. PECA*), decided today, concern interpretation of the collective bargaining agreement between the International Brotherhood of Electrical Workers, Local 1186 (IBEW or Union) and the Pacific Electrical Contractors Association (PECA). In 1985, the PECA–IBEW Employee Health and Welfare Trust Fund (H & W Fund) began running a deficit. The H & W Fund actuary recommended eradicating the deficit by increasing revenues, decreasing employee benefits or both. The six trustees of the H & W Fund (three appointed by IBEW and three appointed by PECA) deadlocked on what course of action to pursue. The PECA trustees, Kim, et al., filed this action to compel submission of its proposal to reduce benefits to an umpire pursuant to terms of H & W Fund Agreement and § 302 of the Labor Management Relations Act (LMRA).[1] The Union trustees, Fujika-

---

1. 29 U.S.C. § 186(c)(5)(B) (1982 & 1987 Supp.).

wa, et al., counterclaimed requesting that the court compel submission to the Joint Conference Committee (JCC) of the Union's demand for supplemental contributions. The JCC is a joint PECA–IBEW committee formed to resolve grievances arising under the collective bargaining agreement. The court ordered the parties to submit both proposals to a duly appointed umpire and that only the trustees or the umpire could refer the Union's request for supplemental contributions to the JCC. The Union trustees timely appeal.

## I.

The PECA–IBEW Health and Welfare Fund provides health and welfare benefits to Union employees and dependents. It is governed by the PECA–IBEW Health and Welfare Fund Declaration of Trust Agreement (H & W Agreement) incorporated in the PECA–IBEW collective bargaining agreement (Contract). The Fund is managed by six trustees, three appointed by PECA and three appointed by the Union. In the event of deadlock, disputes must be submitted to an impartial umpire selected by the trustees.

The Contract invests the JCC with the responsibility to handle all "grievances involving any violations of this Agreement by the Union or PECA or failure of an Employer to pay wages or fringe benefit contributions.... [and] seek to resolve any matter referred to it by any duly constituted joint committee comprised of representatives of the PECA and the Union." Contract § 1.05(a)(1), (b). The JCC consists of three representatives appointed by the Union and three representatives appointed by PECA. If the JCC reaches an impasse on any grievance submitted to it, a party may submit the grievance to arbitration.

The PECA–IBEW Contract provides that employers shall pay $1.52 per hour worked by each employee to the H & W Fund. Contract § 3.53(a). It also provides:

It is agreed and understood that from time to time, during the duration of this Agreement, conditions may arise requiring supplemental contributions to the H & W Fund in addition to the contribution rate provided in Section 3.53. Upon the recommendation of the actuarial consul-

tant to the H & W Fund, the Joint Conference Committee shall determine the need for and the rate of supplemental contributions which shall be paid only by Employers and not employees.

Contract § 6.08(a).

On September 26, 1985, the H & W Fund actuary reported to the trustees that the fund was running a deficit and would exhaust its economic reserves by the end of fiscal year 1985–1986. The actuary concluded:

[T]he Trustees must undertake additional steps that will either increase revenues, reduce costs or both. This implies a need for substantial rethinking of the current benefit structure, and a need to further review mechanisms for cost-sharing, particularly as regards to Retiree benefits.

On October 28, the PECA trustees moved to reduce benefits by $74.00 per active employee per month. The PECA trustees voted for the motion and the Union trustees voted against it. The Union trustees then moved that the employers contribute an additional $.57 per hour or that the trustees recommend that the parties agree to divert contributions from the Pension Fund. The Union trustees voted for the motion and the PECA Trustees voted against it. On November 7, the PECA trustees proposed submitting to an umpire their motion to reduce benefits. On November 15, the Union trustees rejected that proposal and instead proposed submitting to the JCC their motion to increase contributions or divert money from the Pension Fund. On November 21, the Employer trustees filed this action to compel submission of its proposal to an umpire. The Union trustees counterclaimed requesting an order submitting the dispute to the JCC and if necessary to an arbitrator pursuant to the terms of the grievance resolution procedures in the collective bargaining agreement.

Both parties moved for summary judgment. On August 18, the court granted the PECA trustees' motion and referred both proposals to an umpire. The court further held:

The provisions of Article 6B, Section 6.08(a) of the PECA/IBEW Agreement

regarding the necessity of supplemental contributions to the HW Fund (in addition to the contribution rate provided in Section 3.53) only come into play if a majority of the HW Fund Trustees *or the umpire* refer the matter to the JCC. (Emphasis in original). The Union trustees appeal only this part of the district court's decision. The Union trustees do not challenge that part of the Order compelling submission of all issues to the umpire. However, in *IBEW v. PECA,* decided four months earlier by the same court, the Union had bypassed the umpire and the JCC and brought suit to compel arbitration of its demand for supplemental contributions on the ground that the PECA JCC members had refused to meet to consider the Union's demand. On May 27, 1986, the court dismissed *IBEW v. PECA* on the ground that the dispute was not an arbitrable grievance under the terms of the Contract. The district court's determination in this case that only the H & W Fund trustees or the umpire could refer the matter to the JCC, if sustained, mandates that the decision in *IBEW v. PECA* be vacated on the ground that the Union brought the action to compel arbitration prematurely.

## II.

We review the district court's grant of summary judgment de novo. *Int'l Ass'n of Mach. and Aerospace Workers v. Aloha Airlines, Inc.,* 790 F.2d 727, 730 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986). In reviewing a grant of summary judgment in a case where there are no disputed facts, we need only determine whether the substantive law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984).

The Union trustees assert that the district court erred in barring the Union from bringing its demand for supplemental contributions directly to the JCC. They argue that the Contract imposes an affirmative obligation on PECA to make supplemental contributions: "Upon the recommendation of the actuarial consultant to the H & W Fund, the Joint Conference Committee shall determine the need for and the rate of supplemental contributions which shall be paid only by the Employers and not employees." Contract § 6.08. They argue that PECA's failure to make supplemental contributions gives rise to a Contract grievance, "failure of an Employer to pay ... fringe benefit contributions," Contract § 1.05(a)(1), and the JCC, not the H & W Trust Fund, is the body charged with resolving grievances arising under the Contract. Nonetheless, they contend that referral to a Trust Fund umpire and to the JCC are not mutually exclusive remedies.

Resolution of this dispute requires an interpretation of various provisions of the H & W Agreement and the Contract in the context of a comprehensive scheme of federal regulation. Two statutes are especially significant in the area of employee-benefits funds: the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c) (1982), and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001–1461 (1982). *Fujikawa v. Gushiken,* 823 F.2d 1341, 1344 (9th Cir.1987). Section 302(c)(5) of the LMRA authorizes the creation of trust funds to provide benefits to employees. *Id.* The section requires that employees and employers be equally represented in the administration of the fund. 29 U.S.C. § 186(c)(5)(B). The trustees serve as fiduciaries. 29 U.S.C. § 1002(21)(A) (1982 & 1987 Supp.). Where the trustees reach a deadlock in the administration of the fund, the dispute must be submitted to an umpire. 29 U.S.C. § 186(c)(5)(B); *Fujikawa v. Gushiken,* at 1345–46.

■ Consistent with the statutes, the H & W Agreement calls for management by six trustees, three appointed by PECA and three appointed by the Union. The Agreement invests the trustees with all powers necessary to manage the trust fund including the power to adjust benefits and "maintain any legal proceedings necessary ... to secure payment of Employer contributions...." H & W Agreement art. VI, § 2(*o*) & (*s*). Although the trustees do not have the power to increase employer contributions absent employer consent, they may maintain legal action to enforce existing employer contribution obligations. *See*

*Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 373, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984).

■ The obligation under Contract § 6.08 depends upon the occurrence of "conditions [which] may arise requiring supplemental contributions...." We agree with the district court that the occurrence of these "conditions," in the first instance, must be determined by the trustees. Effective management of the trust fund requires that the trustees first consider the data and options presented by the actuarial consultant and determine if conditions have arisen requiring supplemental contributions before grievance arbitrators or the courts are called upon to enforce the § 6.08 obligations. This is especially necessary in this case because PECA represents only some of the employers contributing to the H & W Fund.

> The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements.

*Schneider,* 466 U.S. at 373, 104 S.Ct. at 1850. The trustees must have the opportunity to develop a comprehensive strategy for attacking the deficit that will include enforcing the obligations of all employers. If the trustees determine that the PECA employers have obligated themselves to make supplemental contributions under section 6.08 of the Contract, then the trustees not only have the authority but the duty to institute legal action to enforce that obligation. If the trustees deadlock, the parties must submit the dispute to an impartial umpire. 29 U.S.C. § 186(c)(5)(B); H & W Agreement art. V, § 5.

■ We have determined that "where administrative procedures have been instituted for the resolution of disputes between parties to a collectively bargained or other agreement, the courts will generally require the exhaustion of those procedures before exercising the jurisdiction they might otherwise have over disputes subject to resolution through said procedures." *Amato v. Bernard,* 618 F.2d 559, 566 (9th Cir.1980); *see also Fujikawa v. Gushiken,*

at 1346. Naturally, parties must exhaust all such procedures in accordance with the terms of their agreements before turning to the courts to request enforcement of one procedure over another. These agreements do not permit the Union to bypass the H & W umpire in favor of the arbitration procedures in the collective bargaining agreement. To hold otherwise would hamper effective management of the H & W Trust Fund and undercut the requirements of the LMRA.

### III.

We affirm the decision of the district court compelling submission to an umpire of the PECA trustees' motion to reduce benefits and the Union Trustees' proposal to refer to the JCC their motion to either increase employer contributions or divert PECA–IBEW Pension Fund contributions to the H & W Fund. Furthermore, we sustain the ruling that the provisions of § 6.08(a) of the PECA–IBEW collective bargaining agreement only come into play if the majority of the H & W Fund trustees or the umpire refer the matter to the JCC.

AFFIRMED.