GRAPHIC COMMUNICATIONS UNION,
DISTRICT COUNCIL NO. 2, AFL–CIO,
Plaintiff–Appellant, Cross–Appellee,

v.

GCIU–EMPLOYER RETIREMENT BEN-
EFIT PLAN, Defendant–Appellee,
Cross–Appellant.

Nos. 89–55227, 89–55261.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1990.

Decided Oct. 26, 1990.

Steven J. Kaplan, Gilbert & Sackman, Los Angeles, Cal., for plaintiff-appellant-cross-appellee.

Kirke M. Hasson, Kim Zeldin and Robert M. Westberg of Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellee-cross-appellant.

Before WALLACE, THOMPSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We again confront the tension created by the competing concerns of access to the

courts and the enforcement of agreements to arbitrate employee benefit plan disputes. We must determine whether the congressional guarantee of ready access to the federal courts renders a mandatory arbitration agreement unenforceable.

I

Between 1979 and 1986, Owens–Illinois Forest Products Group ("Owens–Illinois") operated a plant at Tracy, California for the purpose of manufacturing corrugated boxes. Since 1979, Graphics Communications Union, District Council No. 2 ("the Union"), or a predecessor union has been the exclusive bargaining representative of the production and maintenance employees at the Tracy plant. Under the collective bargaining agreements between Owens–Illinois and the Union, Owens–Illinois contributed to an employee benefit plan ("the GCIU–Employer Retirement Benefit Plan" or "the Plan"). The Plan was administered by a joint board of trustees comprised of multiple employer and union representatives and was regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See generally* 29 U.S.C. §§ 1001–1461 (1988).

In June 1986, Owens–Illinois sold the plant to Temple–Inland, Inc. ("Inland") as "a going business"; Inland continued to operate the plant with the same employee complement. Inland and the Union soon signed a new labor agreement which does not require Inland to contribute to the GCIU–Employer Retirement Benefit Plan. A new Inland plan was also established, which does not give employees any credit for work performed between 1979 and 1986 when they were employees of Owens–Illinois.

In June 1987, the Union wrote to the Plan on behalf of approximately 125 employees at the Tracy Plant and requested the application of certain special-vesting rules. Those rules are provided for in article VII, section 4 of the Plan Document and are entitled "Vesting On Termination Due to Closure of a Plant or Department."[1] On June 29, 1987, the Plan's administrative office denied the Union's claim, stating that "the Plan rules have not been met and special vesting cannot be applied." Letter from Arthur L. DeKuhn to Stephen E. Northrup (June 29, 1987) (officially reporting the decision of the Administrative Office of the GCIU–Employer Retirement Fund). The Union appealed to the trustees, who upheld the Plan administrator's decision.

Article XIII, section 5(c) of the Plan Document gave the Union the right to appeal the trustees' decision to final and binding arbitration. The Union declined to do so. Instead, it filed suit in federal district court, seeking both a declaration that the arbitration provision violated ERISA and a resolution of the vesting-rights issue.

On December 9, 1988, the Plan filed a motion to dismiss the suit, alleging that the Union had failed to exhaust the Plan's internal claims procedure, including arbitration. The Plan additionally requested attorney's fees. The Union opposed the motion to dismiss and moved for partial summary judgment.

Without stating the reasons for its decision, the district court granted the Plan's motion to dismiss the action. The court denied the Union's motion for summary judgment and the Plan's motion for attorney's fees.

1. This section provides in its entirety as follows:
Vesting on Termination Due to Closure of a Plant or Department
If participation in the Plan terminates due to the permanent closure of a plant or department by a Participating Employer, a Participant's right to benefits shall vest provided such Participant: (a) has accumulated at least two (2) years of credit for vesting purposes of the Plan prior to such closure; (b) has been unable to obtain regular employment with another Participating Employer[;] and (c) meets the service requirements for early retirement benefits.
If the Participant does at any time thereafter obtain regular employment with another Par-

ticipating Employer this Section shall no longer apply, but any such period of absence from the Plan shall not be considered a Break in Continuous Service so as to require a forfeiture of previously accumulated credit.
Retirement Benefit Plan of the GCIU–Employer Retirement Fund, art. VII, § 4, *in* GCIU Employer Retirement Fund, Summary Plan Description and Plan Document (as amended through July 1, 1983) [hereinafter "Plan Document"].
All references to the record in this case are to *Graphic Communications Union, District Council No. 2 v. GCIU–Employer Retirement Benefit Plan,* No. CV 88–6186 TJH (C.D.Cal.).

The Union timely appeals from the district court's order dismissing its action and denying its motion for summary judgment. The Plan timely cross-appeals from that part of the district court's order which denied its request for attorney's fees. We have jurisdiction over both appeals under 28 U.S.C. § 1291.

## II

If a participant in an employee benefit plan has had a claim for benefits denied by a plan's administrator, section 503 of ERISA requires that the plan "afford a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary." 29 U.S.C. § 1133(2) (1988); *accord* 29 C.F.R. § 2560.503–1(g) (1989). The parties agree that this requirement was satisfied in the instant dispute. After the Union's claim for benefits was denied by the Plan's administrator, the trustees reviewed the administrator's decision and upheld it. The disputed question raised here is, what must come next?

The Plan contends that if the Union is aggrieved by the trustees' decision, it may appeal that decision to an impartial arbitrator. It relies on article XIII, section 5 of the Plan Document to support this contention. This section provides that a party dissatisfied with the trustees' decision "shall have the right to appeal the matter to arbitration." It provides in its entirety as follows:

> 5. Reviewing Hearing and Arbitration Procedures....
>
> (c) Appeal to Arbitration
>
> If the Participant or beneficiary is dissatisfied with the written decision of the Trustees, he shall have the right to appeal the matter to arbitration in accordance with the labor arbitration rules of the American Arbitration As-

sociation, provided that he submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested the Trustees shall submit to the arbitrator a certified copy of the record upon which the Trustees' decision was made. The question for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, or (3) whether their findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon the Trustees, upon the appealing party, and upon all other parties whose interests are affected thereby.

> The expenses of arbitration shall be borne equally by the appealing party and the Trust Fund, unless otherwise ordered by the arbitrator.

Plan Document, art. XIII, § 5 (paragraph break added); *accord* Trust Agreement of the GCIU–Employer Retirement Fund, art. X, § 5 (as amended through July 1, 1984).[2] The Union and the Plan agree that this provision is for *mandatory* arbitration.[3]

The Union argues that it has the right to seek judicial review of the trustees' decision. It points to section 502 of ERISA, which authorizes a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1988). The Union also emphasizes that Congress intended in ERISA to "provid[e] for ... ready access to the Federal courts." *Id.* § 1001(b).

The Union advances several arguments that the arbitration provision to which it

---

2. Article X, section 5 of the trust agreement and article XIII, section 5(c) of the Plan Document use the same language. We therefore use the terms "Plan Document" and "trust agreement" interchangeably in referring to the arbitration provision.

3. Although the trust agreement and Plan Document provide that participants or beneficiaries who are dissatisfied with a decision by the trustees "shall have the right to appeal the matter to

arbitration," the Union has never argued during this litigation that the agreement merely *permits* an aggrieved party to pursue arbitration without precluding him from going to court instead. Indeed, the Union has consistently indicated its view, with which the Plan agrees, that the agreement here *mandates* arbitration. *See, e.g.,* Complaint for Declaratory and Injunctive Relief and to Clarify Benefits Pursuant to ERISA, at 9 (Oct. 18, 1988) (referring to "the mandatory arbitra-

agreed cannot be enforced. We address the contentions in turn.[4]

## A

First, the Union contends that the so-called arbitration agreement is unenforceable because it requires arbitration of "questions of law." The Union contends that the law of this Circuit forbids enforcement of an arbitration provision when the disputed issues raise "legal questions."

We have previously considered, in significantly varying contexts, whether exhaustion of internal remedies is a prerequisite to a court's consideration of an ERISA issue. In our first case on the question, we held that federal courts should usually require that parties seeking a review of a decision by an employee benefit plan's administrator first seek review of that decision from the plan's trustees. *See Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir. 1980). We subsequently held that such exhaustion was not required, even where an agreement mandated final and binding arbitration, before a *statutory* claim under section 510 of ERISA[5] could be brought in federal court. *See Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984). We emphasized in *Amaro* that only interpretation of ERISA (*viz.,* section 510) was required in that case and that such interpretation "is a task for the judiciary, not an arbitrator." *Id.* at 751.

We have articulated the distinction between *Amaro* and *Amato.* On the one hand, "[e]xhaustion of internal dispute pro-

cedures is not required where the issue is whether a violation of the terms or provisions of the statute has occurred." *Fujikawa v. Gushiken,* 823 F.2d 1341, 1345 (9th Cir.1987) (citing *Amaro,* 724 F.2d at 751), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 945 (1988); *accord Johnson v. St. Frances Xavier Cabrini Hosp.,* 910 F.2d 594, 595–97 (9th Cir. Aug. 6, 1990) (agreement to arbitrate disputes not enforceable in ERISA context when the claim at issue concerned alleged violation of "various sections of ERISA," for the answer to the claim would be "found within the statutory provisions of ERISA"). On the other hand, exhaustion, at least to the level of the trustees, is ordinarily required where an action seeks " 'a declaration of the parties' rights and duties' *under the pension plan.*" *Fujikawa,* 823 F.2d at 1346 (quoting *Amato,* 618 F.2d at 561) (emphasis in original).

Thus, the fundamental question here is whether the claim the Union seeks to assert arises under the employee benefit plan or under ERISA. *See Amaro,* 724 F.2d at 748, 751 (adherence to an "agreement [which] mandate[d] final and binding arbitration of contractual disputes" was not required because the disputed issue was "solely ... an alleged violation of a protection afforded by ERISA"); *Fujikawa,* 823 F.2d at 1345. When the question is properly thus framed, the answer is not difficult. The special-vesting claim which the Union asserts here arises under the trust agreement and not under ERISA itself. *See supra* note 1.

---

tion provisions of the Trust Agreement and the Plan"); Appellant's Opening Brief at 5 (No. 8955227) (stating that an "aggrieved claimant" who seeks review of the trustees' decision is "require[d] ... to appeal to 'final and binding' arbitration") (quoting Plan Document, art. XIII, § 5(c)); *id.* at 11 (section 5 of article XIII of the Plan Document "requir[es] mandatory arbitration"). We decide this case in accordance with the parties' shared position, but we emphasize that we do not necessarily agree that such language mandates arbitration.

4. We review *de novo* the district court's dismissal of the Union's action and denial of the Union's motion for summary judgment. *See, e.g., Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301, 1303 (9th Cir.1983).

5. This section of ERISA authorizes civil actions to enforce certain guarantees provided by the statute; it reads in part as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140 (1988).

We are unimpressed with the Union's assertion that the arbitrator would not review the trustees' decision entirely *de novo*, but would instead determine, in accordance with the trust agreement, whether the decision was arbitrary or capricious, in error on a question of law, or not supported by substantial evidence. The Union contends that this standard of review would force the arbitrator to resolve "legal questions" and that, under *Amaro*, unexhausted legal questions may be presented to the courts if any party so desires.

This attempted distinction between "legal questions" and "non-legal" or "plan-based" questions must fail. Whether the Plan has been violated is no less a "legal question" than whether ERISA has been violated. The enforceability of an arbitration provision in this Circuit turns on whether it is the statute or the plan that gives rise to the underlying claim. The standard of review to be employed by the arbitrator does not transmute a plan-based question into a question of statutory interpretation.[6]

In short, because the underlying disputed question here (*viz.*, whether the trustees properly upheld an administrator's denial of the Union's claim for special vesting) arises under the plan, ERISA does not forbid enforcement of an agreement to arbitrate the question.

**B**

The Union alternatively argues that the arbitration provision contravenes the regulatory requirement of prompt decisionmaking by the Plan's fiduciaries. The United States has directed that when a claim for plan benefits has been made, "[a] decision by an appropriate named fiduciary shall be

made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review." 29 C.F.R. § 2560.503–1(h)(1)(i) (1989). If the fiduciary's decision on review is not furnished to the claimant within the specified time, the claim shall be deemed denied. *Id.* § 2560.503–1(h)(4).

■ We can quickly reject the Union's argument that the arbitration provision in the trust agreement at issue violates the time provisions contained in the *Code of Federal Regulations*. The regulations apply only to review by fiduciaries, including trustees; the provisions address not at all review by an impartial arbitrator. Furthermore, arbitration following the trustees' decision seems at least as likely as court litigation to provide a prompt resolution of a claim. *Cf. Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) ("The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings.").

**C**

■ Finally, the Union contends that the arbitration provision is invalid because it indicates that the cost of any arbitration shall be borne equally by the parties unless the arbitrator orders otherwise. The Union argues that this provision inhibits and hampers claims.

The Union has cited no relevant authority for the argument that the costs-bearing provision violates ERISA. Instead, it notes that a claims procedure may be deemed unreasonable "if it requires the payment of a fee as a condition for filing a claim or

---

**6.** The Union's general contention, which we have concluded may be arbitrated, is that the trustees misinterpreted the special-vesting provision. To the extent that the Union is also arguing that the arbitration provision itself is somehow a violation of ERISA, its claim alleges a violation of the statute and, under *Amaro*, need not be arbitrated. The Union, however, has received review of that argument. Finally, to the extent that the Union's argument is based on both the statute and the plan, an arbitration

agreement is enforceable here because the answer to the special-vesting dispute would depend on the terms of the plan and not the words of the statute. *Cf. Johnson*, at 596 ("[I]n determining whether a dispute arguably covered by both ERISA statute and a collective bargaining agreement is arbitrable, the key question is whether the answer settling the dispute is to be found in the collective bargaining agreement or in ERISA's provisions.") (quotation omitted).

obtaining review of a denied claim." 42 Fed.Reg. 27,425, 27,426 (1977) (supplementary information issued by the Department of Labor in conjunction with its promulgation of 29 C.F.R. § 2560.503–1). This cited information, however, is clearly inapposite. Like the regulations concerning the time limitations which we previously discussed, the quoted material addresses claims to an administrator and review of those claims by the fiduciary. Neither its express provisions nor its underlying purposes are implicated by the arbitration which, under the trust agreement at issue, may follow the fiduciary's review. Furthermore, as the Plan notes, such a cost-bearing provision seems no more burdensome than a court filing fee or than ERISA's statutory provision authorizing a court to award costs and attorney's fees against one party.

## III

We turn next to several questions concerning attorney's fees in this action. The Plan cross-appeals from the district court's order denying it attorney's fees below. It has also moved for such fees in both appeals currently before us. We address first the denial of fees by the district court and then the motions for fees in this court.

## A

■ Section 502(g)(1) of ERISA provides for the award of attorney's fees in certain instances. *See* 29 U.S.C. § 1132(g)(1) (1988) (stating that in certain actions under ERISA "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). We review a district court's disposition of a motion for attorney's fees under ERISA for abuse of discretion. *See Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 452 (9th Cir.1980).

In *Hummell,* we indicated that courts should consider the following factors in considering motions for attorney's fees under section 502(g)(1):

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of fees;

(3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances;

(4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Id.* at 453. Here, however, there is no indication in the record that the district judge considered these factors; his entire discussion of the issue amounts to one sentence, unaccompanied by analysis, denying the Plan's motion for attorney's fees.

We must therefore vacate so much of the district court's order as denied the Plan's motion for attorney's fees. *See Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985); *cf. LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1342 (9th Cir.1986) (in ruling on motions for attorney's fees in cases implicating the so-called twelve *Kerr* factors, a district court's "complete failure to consider [the *Kerr*] guidelines constitutes an abuse of discretion"). We remand the question of attorney's fees to the district court, where it should rule anew on the Plan's motion for fees. The court should consider the pertinent *Hummell* guidelines and state the reasons for its decision. *See Ellenburg,* 763 F.2d at 1097.

## B

■ We must nonetheless consider the *Hummell* factors ourselves, for the Plan has also moved for attorney's fees in both appeals. We deny the motions for the reasons set forth below.

At the outset, we note that "the *Hummell* factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Operating*

Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1506 (9th Cir.1984) (citing Marquardt v. North Am. Car Corp., 652 F.2d 715, 719–20 (7th Cir.1981)). The result in each case, however, must vary according to its particular facts, and our comment in Gilliam must not become a substitute for careful analysis of the Hummell factors in each case.

The first Hummell factor (culpability) militates against an award of attorney's fees to the Plan in either appeal, for the parties agree that the Union did not bring or prosecute this action in bad faith. Although it is disputed whether the Union would be able to pay fees in both appeals, we conclude that this second factor points toward an award of fees. The third factor (deterrence) also supports the Plan, for awards of fees here against the Union might discourage others from commencing similar actions. The fourth factor or guideline (benefit to all) militates clearly in favor of the Union, for it was the Union, not the Plan, that was seeking to resolve a significant legal question regarding ERISA. Finally, the fifth Hummell factor (relative merits) favors the Plan, for it has succeeded here both as appellee and as cross-appellant.

Thus, three Hummell factors point toward awarding fees, while two indicate otherwise. Mere numerical assessment does not control, however; indeed, in some cases, one Hummell factor alone may be decisive. See Smith v. CMTA–IAM Pension Trust, 746 F.2d 587, 592 (9th Cir.1984) (Wallace, J., concurring in the judgment) (citing Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir.1984)). Although it is a close question in this case, we conclude that an award of attorney's fees is not indicated in either appeal; we find particularly pertinent the first and fourth Hummell factors, for we are persuaded that the Union brought this suit in good faith to resolve a significant legal question concerning the arbitrability of certain issues under ERISA.[7]

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

7. The Union has moved, pursuant to Federal Rule of Appellate Procedure 38, for attorney's fees and costs in defending against the Plan's cross-appeal. We deny the motion, for the Plan's cross-appeal was scarcely frivolous. See Fed.R.App.P. 38 (authorizing sanctions if "an appeal is frivolous"); International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1406 (9th Cir.1985) (defining when an appeal is frivolous within the meaning of Rule 38).

