**FABIAN FINANCIAL SERVICES,**
**Plaintiff,**

v.

**The KURT H. VOLK, INC. PROFIT**
**SHARING PLAN, et al.,**
**Defendants.**

**No. SA CV 91–180 AHS (RWRx).**

United States District Court,
C.D. California.

July 31, 1991.

---

Steven A. Fink, Cecia A. Tripi, Thelen Marrin Johnson & Bridges, Irvine, Cal., Karl D. Belgum, Christopher M. Brock, Thelen Marrin Johnson & Bridges, San Francisco, Cal., for plaintiff.

J. Eric Isken, Faith A. Devine, Graham & James, Los Angeles, Cal., for defendants.

## OPINION ON ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING ATTORNEYS' FEES

STOTLER, District Judge.

### PROCEDURAL HISTORY

On April 5, 1991, plaintiff Fabian Financial Services ("Fabian") filed its Application for Preliminary Injunction seeking to restrain the Kurt H. Volk, Inc. Profit Sharing Plan (the "Plan") from proceeding with arbitration of a claim against Fabian before the American Arbitration Association ("AAA"). On April 29, 1991, the Plan filed its Motion to Stay in which the Plan sought a stay of plaintiff's declaratory relief claim pending the outcome of arbitration. The Plan also sought an award of attorneys' fees and costs.

The issue presented is whether the Plan's claim arising under ERISA against its investment advisor for breach of fiduci-

ary duties may be submitted to arbitration over the objection of the advisor.

Oral argument was heard on May 6, 1991. The Court denied Fabian's application for preliminary injunction and granted the Plan's motion to stay. The Court also awarded attorneys' fees to the Plan and requested that counsel for defendant prepare, serve and lodge proposed Findings of Fact and Conclusions of Law consistent with the Court's ruling pursuant to Local Rule 14.3. The Plan lodged its proposed findings on May 9, 1991 and filed the declaration of counsel in support of attorney fees on May 13, 1991. Fabian filed its Response to the Defendant's Claim for Attorneys' Fees on May 22, 1991.

## STATEMENT OF FACTS

Fabian is registered as an investment advisor with the United States Securities and Exchange Commission. The Plan is an employee pension benefit plan within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(2). The Plan was adopted by Kurt H. Volk, Inc., a Connecticut corporation engaged in the business of commercial printing.

In or about the last quarter of 1984, the Plan retained Fabian to render investment advice. The parties subsequently entered into a written agreement (the "Management Agreement"). According to the allegations in Fabian's complaint, Fabian was supposed to invest the Plan's funds by switching these funds among various mutual funds based in part on the performance of certain technical market indicators. (*See* Complaint at para. 10). In August 1990, Fabian switched Plan funds into the United Services U.S. Gold Shares fund which subsequently suffered a decline in value. (*See* Complaint at para. 11). The Plan asserts that it lost in excess of $660,-000 due to Fabian's decision to place all of the Plan's assets under its control, approximately $5 million, into the United Services U.S. Gold Shares Fund. In September 1990, the Plan terminated the Management Agreement.

The Management Agreement, drafted by Fabian, contains an arbitration clause which provides,

> Any controversy or claim arising out of or relating to this agreement shall be settled by arbitration in the City of Newport Beach, California in accordance with the rules of the American Arbitration Association then in effect, and judgment upon the award rendered may be entered and enforced in the Superior Court, Orange County, California or any other court having jurisdiction thereof.

In January 1991, the Plan filed its Demand for Arbitration. The Plan alleged that Fabian breached "prudent person" and diversification fiduciary duties owed to the Plan under ERISA by investing all Plan assets under its control in a gold fund. The parties agree that the Plan's claim constitutes a "controversy arising out of or relating to this agreement" and thus is covered by the Management Agreement's arbitration clause.

Fabian initiated this suit on April 5, 1991, alleging that a claim brought under ERISA is not subject to arbitration.

## DISCUSSION

### I.

### *Arbitration of ERISA Claims*

Fabian asserts that the claims the Plan seeks to have decided at arbitration—that Fabian violated its fiduciary duties under § 1104(a)(1)(B) and (C) of 29 U.S.C.—relate solely to whether ERISA has been violated and therefore the Plan's claim cannot be decided in that forum.

Fabian maintains that under Ninth Circuit precedent, the enforceability of an arbitration provision in an ERISA claim turns on whether it is the statute or the plan that gives rise to the underlying claim. *See Graphic Communications Union v. GCIU–Employer Retirement Benefit Plan*, 917 F.2d 1184, 1187–88 (9th Cir.1990). If the claims relate to whether the statute has been violated, exhaustion of internal dispute procedures such as arbitration is not required. *Id.* at 1187. However, exhaustion is required if the claim relates to

the parties rights and duties under the plan. *Id.* at 1187. In *Graphic Communications,* the court held that ERISA did not prevent the enforcement of the agreement to arbitrate the dispute because the claim at issue arose under the plan. *Id.* at 1188.

There is no dispute that the Management Agreement's arbitration clause otherwise appears to fall within the coverage of the Federal Arbitration Act. *See* 9 U.S.C. § 1 *et seq.* The agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Fabian does not argue that the Management Agreement is revocable.

■ The Arbitration Act was intended to reverse centuries of judicial hostility towards arbitration agreements and has established a federal policy favoring arbitration which requires that the courts rigorously enforce agreements to arbitrate. *See Shearson/American Express v. McMahon ("McMahon"),* 482 U.S. 220, 225–226, 107 S.Ct. 2332, 2336–2337, 96 L.Ed.2d 185 (1987). This duty is not diminished because a federal statutory claim is the basis of the parties' dispute. *Id.* at 226, 107 S.Ct. at 2337.

■ Congress can override the mandate of the Federal Arbitration Act in a separate statute. The party opposing arbitration bears the burden of showing that Congress intended to preclude a waiver of judicial remedies in that separate statute, or that waiver inherently conflicts with the underlying purposes of that other statute. *See Rodriguez de Quijas v. Shearson/American Express,* 490 U.S. 477, 483, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989). Congress' intent may be deduced from (1) the text of the statute; (2) the

statute's legislative history; or (3) the "inherent conflict between arbitration and the statute's underlying purposes." *McMahon,* 482 U.S. at 227, 107 S.Ct. at 2338.

■ Fabian undertakes to meet its burden by asserting that ERISA claims are not subject to arbitration because interpretation of ERISA is a task for the judiciary, not an arbitrator. As mentioned, Fabian relies on this Circuit's *Graphic Communications* decision, which in turn relied on *Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984). *Amaro* held that the enforcement provisions of § 510 [1] of ERISA required judicial enforcement, and the *Graphic Communications* opinion was careful to so limit it. *Id.* at 1187. This action, however, proceeds pursuant to § 1132 which generally governs civil enforcement of ERISA's provisions.

Fabian also cites, as did *Graphic Communications, Johnson v. St. Frances Xavier Cabrini Hosp.,* 910 F.2d 594 (9th Cir. 1990). *Johnson,* too, relied on *Amaro* and, in particular, *Amaro*'s expressed distrust of arbitrators' competence to decide ERISA claims. *Amaro* at 750, *Johnson* at 596. This rationale for rejection of an arbitration provision appears to contradict express Supreme Court holdings to the contrary. It is true, however, that the *Amaro* court did not have the benefit of the recent decisions discussed above. For reasons not obvious, the Ninth Circuit decisions have not addressed the several Supreme Court cases relied upon by the Plan and which this Court finds persuasive and binding.

Thus, in asserting that an arbitrator cannot interpret ERISA, Fabian finds itself in conflict with, for example, *McMahon,* where the Supreme Court stated " 'we are well past the time when judicial suspicion of the desirability of arbitration and of the

---

1. "Interference With Protected Rights." It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The Provisions of section 1132 of this title shall be applicable in the enforcement of this section. 29 U.S.C. § 1140 (1988).

competence of arbitral tribunals' should inhibit enforcement of the Act 'in controversies based on statutes.' " 482 U.S. at 226, 107 S.Ct. at 2337, quoting *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626–627, 105 S.Ct. 3346, 3353–3354, 87 L.Ed.2d 444 (1985).

Fabian also argues that the non-arbitrability of ERISA claims may be implied from the text of the ERISA statutes. Fabian cites to three sections of ERISA to demonstrate its argument: (1) section 1001(b) guarantees "ready access to the federal courts" for persons seeking to assert ERISA claims, (2) section 1144 preempts other causes of action, and (3) section 1132(e) grants exclusive federal jurisdiction to employee benefit disputes.

Section 1001(b) does not address whether Congress intended to require that parties avail themselves of a federal forum in situations where the parties have chosen to forego an available judicial forum in favor of arbitration. *See Bird v. Shearson Lehman/American Express*, 926 F.2d 116, 120 (2nd Cir.1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds*, 847 F.2d 475, 479 (8th Cir.1988). Thus, section 1001(b) fails to support plaintiff's argument that claims arising under ERISA cannot be submitted to arbitration.

In its reply and at oral argument, Fabian argued that preemption of other causes of action pursuant to § 1144 ensures that all ERISA claims are heard in federal court, leaving no other recourse to aggrieved parties. Section 1144 provides that,

> Except as provided in subsection (b) of this section, the provisions of the subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

As the California Supreme Court recently observed in *Carpenters Southern California Administrative Corp. v. El Capitan Development Co.*, 91 Daily Journal D.A.R. 7481, 7482 (June 20, 1991), the United States Supreme Court has emphasized the unusual breadth of ERISA's express preemption provision in a series of opinions. The Court has described section 514(a) of ERISA as a "virtually unique preemption provision" (*see Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 24, fn. 26, 103 S.Ct. 2841, 2854, fn. 26, 77 L.Ed.2d 420 (1988)), and as a clause "conspicuous for its breadth." *See FMC Corp. v. Holliday*, 498 U.S. ——, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356, 364 (1990). The Court has also characterized the provision as "deliberately expansive" (*see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)), and as "establish[ing] as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *See FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 407, 112 L.Ed.2d at 364.

Consistent with the foregoing, the high court has also interpreted broadly the statutory term "relate to". *See* 29 U.S.C. § 1144(a). Most recently, in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. ——, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 483 (1990), the Court explained that "[t]he key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited preemption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.' " This is consistent with the Court's previous instruction in *Pilot Life* that "a state law, 'relate[s] to' a benefit plan, 'in the normal sense of the phrase, if it has a connection with or reference to such a plan' ". *See Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1553. "Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, 'state laws found to be beyond the scope of [§ 514(a) of ERISA] are few.' " *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir.1989).

The doctrine of pre-emption is not inconsistent with recent decisions upholding pre-

agreement arbitration provisions where the claim involves interpretation of a federal statute. The goal of ERISA pre-emption is to establish a uniform national standard in the disposition of lawsuits which relate to employer benefit plans. *See* 29 U.S.C. § 1001 *et seq.* Disposing of the suit in an arbitral forum will not interfere with this policy because arbitrators must apply established ERISA law in their decision-making process, not state laws which contradict the dictates of ERISA. As the Supreme Court stated in *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354,

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Mitsubishi* also highlights the desirability of submitting ERISA claims to arbitration because it advances the policy of expediting disposition of disputes related to benefit plans.

Fabian also argues that arbitration is improper because subsection (e) of § 1132 grants exclusive federal jurisdiction to employee benefit disputes. Section 1132(e)(1) states,

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Section 1132(e)(1) does not lend strong support to Fabian's position because state courts have concurrent jurisdiction over actions brought under § 1132(a)(1)(B)—i.e., where participants or beneficiaries seek to recover benefits due under the plan, enforce their rights under the terms of the plan, or clarify their rights to future benefits under the terms of the plan. Section 1132(e) does deal with which judicial forum is available, federal or state, but it does not preclude reference to an arbitral forum. *See Bird,* 926 F.2d at 120. The provisions of this statute fall short of compelling a conclusion that Congress meant to preclude resort to the provisions of the Arbitration Act, or, put another way, to preclude waiver of judicial remedies for ERISA's statutory rights.

Lastly, Fabian argues that since arbitration proceedings do not generally result in written opinions and allow for only limited post-award review, arbitration does nothing to further Congress' goal that the law under ERISA be uniform nationwide. It is undoubtedly the goal of Congress that most, if not all, federal statutes be interpreted uniformly nationwide. However, this ideal has not prevented courts from enforcing pre-dispute arbitration agreements based on the Securities Exchange Act of 1934 (*McMahon*), RICO (*McMahon*), the Securities and Exchange Act of 1933 (*Rodriguez*), and ERISA (*Bird, Sulit*). More recently, the Supreme Court has enforced a pre-dispute arbitration agreement where a registered securities representative brought suit against his employer alleging that his termination violated the Age Discrimination in Employment Act (ADEA). *See Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

Fabian's argument seems to assume that all ERISA claims will be adjudicated by arbitration and there will no longer be any precedent upon which the trier of fact may base its decision. However, countless ERISA claims will not and do not involve predispute arbitration agreements. As the trial docket of this court will attest, such cases will proceed to be adjudicated in federal courts. The body of case law interpreting ERISA will continue to grow and provide the framework within which arbitrators may base their decisions.

■ Fabian has not carried its burden of showing, either by the text or legislative history of ERISA, or by analysis of ERISA's underlying purpose, that Con-

gress intended to preclude a waiver of ERISA's judicial remedies. As stated by the Second Circuit in *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 122 (2nd Cir.1991): "We hold that Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims. We further hold that the FAA [Federal Arbitration Act] requires courts to enforce agreements to arbitrate such claims."

## II.

### *Attorney Fees*

 The Plan seeks an award of reasonable attorneys' fees and costs under ERISA. *See* 29 U.S.C. § 1132(g)(1). The Court must analyze the Plan's request in light of the factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980). These factors include (1) the degree of the opposing parties' culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants or beneficiaries of an ERISA plan or to resolve a significant legal question under ERISA, and (5) the relative merits of the parties' positions. *Id.* at 452.

An award of attorneys' fees to the Plan is appropriate in this case. It does not appear that Fabian filed this action in bad faith. Thus the first, and perhaps the third, *Hummell* factors militate against an award of fees. However, the remaining three factors favor a fee award. As to the second *Hummell* factor, Fabian does not deny that it has the ability to satisfy a fee award. As to the fourth *Hummell* factor, the Plan sought to benefit all participants and beneficiaries by vindicating the Plan's right to arbitrate this dispute and contributed to the resolution of a significant legal question under ERISA. This is especially true in light of the fact that it was Fabian who actually drafted the Management Agreement which provided for arbitration. Lastly, as to the fifth *Hummell* factor, the

Plan's position on the merits was significantly stronger than Fabian's.

The Court additionally notes that, although most of the *Hummell* factors in this case point toward a fee award, it would not be necessary for the Court to so find in order to award fees because mere numerical assessment of the *Hummell* factors does not control. *See Graphic Communications*, 917 F.2d at 1190. Nevertheless, an award of attorneys' fees is justified in this case.

For the foregoing reasons, the Court exercises its discretion to award reasonable fees and costs to the Plan forthwith in the amount of $17,969.14, to be paid within 30 days of entry of judgment. In addition to the foregoing statement of reasons, the Court adopts as its Findings of Fact and Conclusions of Law those lodged by defendant on May 9, 1991.

IT IS SO ORDERED.