21 F.3d 1114
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sheila MCDONOUGH, Plaintiff-Appellee,
v.
LEVER BROTHERS COMPANY; Retirement Plan for "Four-Plant
Employees of the Lever Brothers Company," the Benefits
Administration Committee for the Retirement Plan for "Four
Plant" Employees for the Lever Brothers and Irving Trust
Company, Defendants-Appellants.
 No. 92-56035.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 3, 1994.*
Decided March 29, 1994.
 
 Before: SNEED, THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This controversy began when the employee, Sheila McDonough, applied to her employer for disability benefits and was denied them by the benefits plan administrator. Following this denial, McDonough unsuccessfully brought an ERISA action in district court. On appeal, we reversed and remanded to the administrator, who again denied benefits. In a second ERISA action, the district court decided in McDonough's favor. Her employer, Lever Brothers Company, and other defendants timely appeal. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 The defendants-appellants in this case are Lever Brothers Company (Lever Brothers), the Retirement Plan for "Four-Plant" Employees of the Lever Brothers Company (the Plan), the Plan's Benefits Administration Committee (the BAC), and Irving Trust Company (the Trustee), and are referred to collectively as Lever. Plaintiff-appellee McDonough is a former Lever Brothers packing line employee.
 
 
 4
 Lever Brothers manufactures and sells household soap and detergent products. Lever Brothers created and funded the Plan, which provides retirement and disability benefits according to terms negotiated by Lever Brothers and the employees' union.
 
 
 5
 Eligible employees may collect accrued retirement benefits upon "termination of service because of Disability." The Plan defines disability as "[a]n individual's inability to perform the work for which he is employed ... because of physical or mental illness, with no expectation that the individual will recover sufficiently to be able to perform such work in the future." The BAC has interpreted this definition to require an employee to be totally and permanently disabled before collecting benefits.
 
 
 6
 McDonough began working at Lever Brothers' Los Angeles plant in 1970. She did Category C work for 10 years.[1] In the early 1980s, she suffered work-related neck and back injuries. In 1983, she was transferred to Category A work based on her physician's advice.
 
 
 7
 In 1983, McDonough began experiencing psychological problems. Dr. Dennis Gowans, a psychologist, has treated her for work-related stress and other problems since that year. In 1983 and 1986, McDonough was hospitalized for her psychiatric condition due to Dr. Gowans's belief that she might be suicidal. After two temporary disability leaves, she returned to Lever Brothers in August 1986. Dr. Ronald Wing, the Lever Brothers plant physician, determined that it was unsafe for McDonough to work under sedation, and she was suspended. Her last work day was August 20, 1986.
 
 
 8
 On July 28, 1987, McDonough applied for disability retirement benefits, claiming she no longer was able to perform even Category A work at the Lever Brothers plant for psychological reasons. On November 12, 1987, this claim was denied. She appealed to the BAC in January 1988. The BAC denied her appeal on May 4th, concluding that McDonough's disability did not render her permanently unable to work at Lever Brothers. The BAC based its decision on a report by Dr. Wing.
 
 
 9
 McDonough next brought an action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1132(a)(1)(B),[2] in district court on September 21, 1988, seeking a reversal of the BAC's decision on the grounds that it was arbitrary and capricious, fundamentally unfair, and unreasonable. On March 9, 1990, the court granted Lever summary judgment. McDonough appealed to this court, and we reversed and remanded to the BAC.[3]
 
 
 10
 On remand the BAC again rejected McDonough's claim. McDonough then submitted supplemental medical reports[4] and requested reconsideration. The BAC once more denied her disability benefits. The BAC reasoned that she was not permanently disabled because her psychiatric condition may improve with treatment or, alternatively, because her ability to work at Lever Brothers may return with a change in work tasks and plant personnel.
 
 
 11
 McDonough returned to the district court. This time that court moved definitively. On July 9, 1992, it granted her summary judgment, finding that the BAC's denial was not supported by substantial evidence, that the "uncontroverted" record showed that she was permanently disabled, and that she was entitled to disability benefits as a matter of law. The district court awarded McDonough $116,060.00 in attorney's fees and $4,639.59 in costs because it found that the BAC acted in bad faith in its pre- and post-remand evaluations of the evidence.
 
 II.
 DISCUSSION
 
 12
 We review the district court's grant of summary judgment de novo, Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992), looking at the evidence in the light most favorable to Lever, the nonmoving party, to determine whether any genuine issues of material fact exist that should prevent judgment for McDonough, the movant, as a matter of law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 A. The BAC's Denial of Disability Benefits
 
 13
 Lever's primary argument is that the district court failed to defer to the BAC's decision, which it contends was based on a careful, unbiased review of medical evidence. Lever maintains that the court's failure to show deference threatens the integrity of ERISA, which was intended to encourage the creation of benefit plans and to prevent their depletion, and the court system with needless litigation.
 
 
 14
 To assess these contentions, we must determine what level of "deference" and, conversely, what standard of review is proper. A district court reviews denials of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the administrator has discretionary authority, its decision is reviewed for abuse of discretion. See id. at 114-15; Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir.1994) (applying abuse of discretion standard); Eley v. Boeing Co., 945 F.2d 276, 278 (9th Cir.1991) (same); Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 481 (9th Cir.1990) (same).[5] Our review of the district court's application of the above standards of review is de novo. See Phillips v. Alaska Hotel & Restaurant Employees Pension Fund, 944 F.2d 509, 515 (9th Cir.1991), cert. denied, 112 S.Ct. 1942 (1992).
 
 
 15
 Here, the Plan named the BAC as administrator and authorized it to "interpret and construe the Plan and, in general, to decide any matters arising thereunder." Therefore, as already indicated, the district court should have reviewed the BAC's denial for abuse of discretion.
 
 
 16
 Under the abuse of discretion standard, a district court may review only the evidence that was presented to the plan administrator. Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 482 (9th Cir.1990). After reviewing the record, we agree with the district court that no substantial evidence supported the BAC's denial of benefits and that McDonough was entitled to benefits as a matter of law. Medical reports established that McDonough was suffering from a severe psychiatric disorder that constituted a total disability. The evidence nowhere supports the BAC's assertions that her inability to perform Category A work stems from her dislike of the work and of her co-workers. Instead, the record reflects agreement by physicians and psychologists alike that her disability was unlikely to improve and that she never would be able to return to Category A work at the Lever Brothers plant.[6] Accordingly, we uphold the district court's grant of summary judgment.
 
 B. Attorney's Fees
 
 17
 Lever contends that McDonough's award of attorney's fees should be revised. In any action brought by an ERISA plan beneficiary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. Sec. 1132(g)(1). This section is construed broadly so that a plan participant who successfully enforces his rights under the plan normally should receive attorney's fees absent "special circumstances" that make an award unjust. Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984). We will not disturb the district court's award of attorney's fees absent an abuse of discretion, Graphic Communications Union, Dist. Council No. 2 v. GCIU-Employer Retirement Benefit Plan, 917 F.2d 1184, 1189 (9th Cir.1990), and we review the related factual findings for clear error. Price v. Seydel, 961 F.2d 1470, 1475 (9th Cir.1992).
 
 
 18
 A district court considers the following Hummell factors in deciding whether to award attorney's fees under ERISA: (1) any bad faith by the opposing party; (2) the opposing party's ability to pay; (3) the potential deterrence value of an award; (4) whether the party requesting fees sought to benefit all plan participants or to resolve a significant legal question under ERISA; and (5) the relative merits of the parties' positions. See Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980). No single factor is controlling nor must all factors be satisfied to render a fee award appropriate. Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir.1984); see Terpinas v. Seafarer's Int'l Union, Pac. Dist., 722 F.2d 1445, 1448 (9th Cir.1984).
 
 
 19
 Here, the district court applied the Hummell criteria and found that (1) the BAC acted in bad faith both before and after remand by denying McDonough's claim without any substantial evidence; (2) Lever was in a better position to satisfy the fee award; (3) McDonough's five-year endurance through seven separate proceedings and ultimate victory would deter future denials of benefits without substantial evidence; (4) McDonough's efforts would assist other plan participants indirectly because they would make the BAC less likely to deny future claims in bad faith; and (5) McDonough's position was meritorious.
 
 
 20
 This careful consideration of the Hummell factors reflects a proper exercise of discretion. Moreover, no special circumstances existed to warrant deviation from the rule that plaintiffs in ERISA actions ordinarily should be awarded fees. See Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984).
 
 
 21
 McDonough seeks an award of attorney's fees and costs on appeal pursuant to 29 U.S.C. Sec. 1132(g)(1). See Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1417 (9th Cir.1984). After applying the Hummell factors and finding an absence of special circumstances that would make a fee award unjust, we conclude that McDonough is entitled to such attorney's fees and costs on appeal as we deem proper following a showing to this panel in writing not later than 21 days from the date of the filing of this memorandum.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Lever Brothers classifies job positions according to the amount of physical activity required. Employees with substantial physical limitations are assigned Category A work, and those without limitations are assigned Category C work
 
 
 [2]
 This section allows a beneficiary of an ERISA plan to bring a civil action against a plan administrator "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. Sec. 1132(a)(1)(B)
 
 
 [3]
 We found that the BAC had failed to provide important information to Dr. Wing, upon whom it relied in denying McDonough's claim even though Dr. Wing reached his determination after a cursory review of McDonough's incomplete file
 
 
 [4]
 These supplemental reports were based on reviews by Dr. Gowans and Dr. Joel Frank of their past reports of McDonough's condition. They were submitted in February 1992, and concluded that McDonough was permanently unable to return to work at the Lever Brothers plant due to her psychiatric disorder. See infra note 6
 
 
 [5]
 In several cases after Firestone and Jones, we used the term "arbitrary and capricious" to describe this deferential standard of review. See Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 (9th Cir.1990); Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1283-84 (9th Cir.1990), cert. denied, 498 U.S. 1087 (1991). However, because our review in those cases was consistent with the abuse of discretion standard, our use of the different term was an insignificant distinction. Taft explicitly rejected the "arbitrary and capricious" phrase to describe the standard of review. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 n. 2 (9th Cir.1994)
 
 
 [6]
 Dr. Frank, Dr. Gowans, and Dr. Wing all agreed that McDonough suffered from a permanent psychiatric disorder that prevented her from working at Lever Brothers. While treating McDonough, Dr. Gowans reported on January 5, 1988, that a return to Lever Brothers would "be seriously detrimental to her psychological make-up." He recommended that she not return to work at Lever Brothers in any capacity. Twice in 1986, Dr. Gowans had recommended that she have little or no contact with Lever Brothers because it would aggravate her condition
 In Dr. Frank's March 2, 1987, deposition, he said McDonough suffered from a permanent psychiatric disorder and that she was unable to return to Lever Brothers. In a June 27, 1988, deposition, he again said she could not return to the plant.
 Dr. Wing, upon whose opinion the BAC relied in first denying McDonough's claim although he based it on an incomplete medical record, said in his April 20, 1989, deposition that McDonough was not able to work at Lever Brothers. This revised opinion was based upon a review of medical evidence--specifically reports and testimony of Dr. Frank and Dr. Gowans--to which he was denied access before reaching his first opinion.
 Both Dr. Frank and Dr. Gowans made supplemental reports following the BAC's December 12th denial of her claim. These reports, made in February 1992, informed the BAC of its mistaken interpretations of the medical evidence and reiterated that McDonough's permanent psychiatric disorder prevented her from ever returning to Category A work at Lever Brothers. The reporting psychiatrist and psychologist expressly stated that McDonough was not disabled due to a lack of motivation.